UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ERIC PRITCHETT | ) |
| Plaintiff, | ) |
| v. | ) No. 1:13CV100 SNLJ |
| IAN WALLACE, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court defendants Kircher and Reese's motion for summary judgment (#62), filed March 25, 2014. Plaintiff has not responded to the motion, and the time for doing so has long passed.[1]

## I.   Factual Background

The following facts are undisputed. Plaintiff Eric Pritchett has been incarcerated at Southeast Correctional Center ("SECC") in Charleston, Missouri since October 16, 2012. Defendants Cynthia Reese and Dr. Nena Kircher are a licensed professional counselor and licensed psychologist, respectively. They are among more than twenty defendants originally named in the complaint, but they are the only two mental health care providers remaining as defendants. Their employer contracts with the State of Missouri to provide mental health services to incarcerated individuals at SECC.

Plaintiff alleges that the conditions of his confinement have caused him to suffer physically and mentally.

---

[1] Defendants Kircher and Reese filed a reply memorandum after plaintiff filed his response (#90) to the other defendant group's motion for summary judgment. That response (#90) mentioned medical care, but it did not specifically respond to defendant Kircher and Reese's motion.

1

Plaintiff requested transfer to the Skilled Rehabilitation Unit ("SRU"), but his request was denied because his mental health score was "MH3," and a score of "MH4" is required for transfer to the SRU. In addition, defendants Kircher and Reese's professional opinions were that plaintiff did not require transfer to the SRU for treatment. Furthermore, the SRU is a general population setting, and plaintiff had committed repeated code violations which prohibited him from being placed in such a setting.

Plaintiff alleges he was denied mental health services and that SECC is not equipped to treat his mental health conditions. Plaintiff made suicide declarations on eight different occasions between November 6, 2012 and September 11, 2013. Each time he was evaluated for whether he was in fact suicidal. If after evaluation an inmate is considered to be potentially suicidal, he is placed on suicide watch. If he is not determined to be suicidal, but there remains concern for the inmate for a mental health condition, they may be placed on close observation. Whether under suicide watch or on close observation, the inmate is monitored in a safe cell. When released from suicide watch, plaintiff would be placed back in administrative segregation where he was being held due to multiple conduct violations. Plaintiff went on a hunger strike in April 2013 because he wanted the Warden to dismiss a conduct violation he received for causing a riot.

With regard to plaintiff's mental health treatment, SECC has on-site a psychiatrist, psychologist, licensed mental health nurses, licensed mental health professionals and full medical staff. Plaintiff was routinely seen by the psychiatrist and qualified mental health professional for evaluation, counseling, and treatment. Plaintiff has had contact with mental health services at SECC or other prisons since 2009. He was seen by a mental health counselor a number of times before he was transferred to SECC on October 16,

2

2012. Plaintiff submitted a Medical Service Request ("MSR") on October 18, 2012 requesting to see a doctor. He was seen by a qualified mental health professional on October 22, 2012. A psychiatrist attempted to meet with Mr. Pritchett on November 12, 2012, but plaintiff was uncooperative with him. Plaintiff was most often seen by counselor John Darin. Between October 4, 2012 and February 11, 2014, plaintiff was seen by a counselor, mental health nurse, psychologist or psychiatrist on ninety-one occasions. That number does not include the fact that the plaintiff was also seen on weekly rounds by mental health professionals as well. Dr. Kircher saw plaintiff on at least seven occasions between November 6, 2012 and January 14, 2013. Six of Dr. Kircher's visits were while plaintiff was on suicide watch. Plaintiff was seen by Ms. Reese on at least twenty occasions between November 9, 2012 and October 24, 2013. On January 4, 2013, plaintiff reported that he reported suicidal ideation attempting to achieve a cell move. On November 12, 2012, plaintiff stated that he reported suicidal ideations so that he could convince mental health staff to obtain his legal work for him. On March 26, 2013, Ms. Reese noted that plaintiff declares he is suicidal when he gets frustrated.

In additional to being seen on average more than six times per month by mental health staff, plaintiff is in the process of completing the mental health program for segregation called, "Taking a Chance on Change." That program is an in-cell handout/homework program that entails fifty-two weeks of lessons on topics including preparing for change, self-awareness/goal setting, identifying and changing mistaken beliefs, effective problem solving, effective communication, anger management, stress management and relapse prevention.

Plaintiff brought this 42 U.S.C. § 1983 claim against a number of individuals employed at SECC. Plaintiff's claims against defendants Reese and Kircher are that they

3

failed to transfer him to a State mental hospital and that he was denied mental health services at SECC, all in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to

4

defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion. Local Rule 4.01 (E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. ***All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party***.

(emphasis added). Even where all of movant's statements of fact are deemed admitted, the Court must look at the entire record to determine whether summary judgment is warranted.

With these principles in mind, the Court turns to the discussion.

5

## III. Discussion

Each of plaintiff's two claims will be discussed in turn. At the outset, the Court notes that because plaintiff did not respond to the defendants' statement of undisputed facts, those facts are deemed admitted for the purpose of summary judgment.

First, plaintiff claims that defendants wrongfully failed to transfer him to a hospital or the Skilled Rehabilitation Unit for his mental problems. Plaintiff requested a transfer to the SRU, but defendant Reese advised him that his request was denied on October 24, 2013. The request was denied because plaintiff's mental health score was MH3, and a score of MH4 is required for transfer to the SRU. In addition, defendant Reese advised plaintiff that the SRU is a general population setting, and plaintiff's own repeated conduct violations prohibited him from being placed in such a setting. Therefore, from a procedural standpoint, plaintiff was not a candidate for transfer to the SRU or a state mental hospital. In addition, defendants Reese and Kircher's affidavits show that, in their professional opinions, they did not believe transfer to the SRU was indicated for plaintiff's condition.

To succeed on his Eighth Amendment claim, plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A difference in opinion between plaintiff and his health care providers regarding appropriate treatment is insufficient to state a claim. *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). "Inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Here, the undisputed facts show that plaintiff merely disagreed with the course of his treatment, and his claim therefore fails.

Next, plaintiff claims that he was denied mental health services by the defendants. Specifically, he alleges that the defendants did not offer "therapy, counseling, or help of any kind" and that SECC was not equipped to treat his mental condition. The only specifics plaintiff offers about his mental condition are that he was suicidal and that he hit his head against the wall and made it bleed. To prevail on his claim, plaintiff must show deliberate indifference: (1) that he suffered from an objectively serious medical need and (2) that the prison officials actually knew of but deliberately disregarded that need. *Dulany*, 132 F.3d at 1239. Defendants Reese and Kircher have set forth facts showing that plaintiff's mental condition (which they appear to presume, for the purpose of summary judgment, is a serious medical condition) was not disregarded: Between October 4, 2012 and February 11, 2014, plaintiff was seen by a counselor, mental health nurse, psychologist, or psychiatrist on ninety-one occasions. He was also seen on weekly rounds by mental health professionals. Dr. Kircher herself saw plaintiff on at least seven occasions between November 6, 2012 and January 14, 2013. Six of Dr. Kircher's visits were while plaintiff was on suicide watch following suicide declarations. And Ms. Reese saw plaintiff on at least twenty occasions between November 9, 2012 and October 24, 2013. Plaintiff was placed on suicide watch or otherwise treated for his suicidal ideations (even when plaintiff admitted he declared himself suicidal in order to achieve a cell move or to convince mental health staff to obtain legal work for him). Plaintiff has set forth no evidence --- or even contested the facts set forth by defendants --- to show that the defendants were in any way deliberately indifferent to a serious medical condition. He received counseling and was repeatedly seen and treated by the two defendants personally. The defendants are also overseeing plaintiff's participation in a mental health

program. Defendants are therefore entitled to summary judgment on plaintiff's claim that they were deliberately indifferent to his serious medical needs.

**IV.    Other Motions**

Finally, the Court will address plaintiff's motions for default (#71, #83) and latest motion for appointment of counsel (#91). The motions for default states that because the defendants (1) had not properly served discovery responses, and (2) had not yet responded to his motion for summary judgment, default should be entered against them. Defendants did respond to plaintiff's motion for summary judgment, and defendants state that they have produced materials to defendants in accordance with the Rules of Civil Procedure. Plaintiff has not filed reply memoranda refuting the defendants' statements. Plaintiff has also not filed a motion to compel nor stated that he has attempted to resolve the alleged discovery disputes without the need for Court intervention. The motions for default will be denied. As for the motion for appointment of counsel, that motion will be denied for the same reason previous motions have been denied. The Court will continue to monitor this case to determine whether appointment is necessary.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Kircher and Reese's motion for summary judgment (#62) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motions for default (#71, #83) and appointment of counsel (#91) are **DENIED.**

Dated this  31st  day of October, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE