UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ERIC PRITCHETT | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:13CV100 SNLJ |
| IAN WALLACE, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court the plaintiff's motion for summary judgment (#73) and the remaining defendants' motion for summary judgment (#86).

**I.    Factual Background**

The following facts are undisputed.  Plaintiff Eric Pritchett has been incarcerated at Southeast Correctional Center ("SECC") in Charleston, Missouri since October 16, 2012.  Defendants are SECC employees  Defendants Ian Wallace, Donna Wigfall, Clifton Cossey, Steven Buhs, Cheryl Thompson, Ryan Moss, Anthony Parker, Jessie May, Bryan Hoskins, Kevin McKay, Cortney Bailey, Richard Lincoln, Stephen Bergeron, James Hack, Bobby Cantrell, Lorene Armstrong, Brandi Merideth, Richard Trout, Brett Hays, Jared Kline, and William Petty.

Plaintiff's allegations may be categorized into the following five categories --- (1) Denial of Access to Legal Materials, (2) Retaliation, (3) Denial of Medical Care, (4) Denial of Due Process, and (5) Prison Conditions.

(1) Denial of Access to Legal Materials.  Plaintiff states that his legal materials were taken from him on October 16, 2012 and not returned.  He states that he was in the

1

process of appealing his criminal convictions and that losing his materials was detrimental to his case. At his deposition, he stated that his conviction was for statutory rape and tampering with a witness and that he ultimately had an opportunity to speak with witnesses regarding his appeal but that those witnesses were not helpful. He also stated that the did not miss any deadlines.

(2) Retaliation. Plaintiff says he sought Informal Resolution Request ("IRR") and other forms to grieve on the matters cited in his complaint but that he was refused.[1] He states that his requests for forms caused the staff to become hostile and retaliate against him by telling other inmates he was a snitch and threatening conduct violations, isolation, and physical harm. Plaintiff states that certain defendants issued conduct violations in retaliation for his complaints; the conduct violations resulted in his losing phone privileges and money from his account, which deprived him of the ability to make hygiene item purchases. Plaintiff states defendants Wallace, Cossey, Buhs, Thompson, Moss, Parker, Kline, May, Hayes, Hoskins, McKay, Bailey, Lincoln, Bergeron, Hack, Cantrell, Petty,[2] Armstrong, and Merideth were responsible for those wrongs. Plaintiff also says he was left without clothing in a suicide watch cell where he was viewed every fifteen minutes by a female employee, and, when he complained, he was issued a sexual misconduct violation. Similarly, plaintiff said he was spied on by a female nurse while he was in the shower and, when he complained, he was issued a conduct violation and placed on "meal loaf" as punishment.

---

[1] Plaintiff's claims against certain defendants regarding being prevented from filing IRRs and grievances were dismissed for failure to state a claim.

[2] Plaintiff does not identify a name for a defendant he refers to as Number 18. The Court has identified this defendant by his Employee Identification number.

Plaintiff also states that on January 8, 2013, he was placed in full restraints on a chair and pepper sprayed. He states he was left to suffer, covered in pepper spray, for two hours. He states that conduct violated his Eighth and Fourteenth Amendment rights and that defendants Lincoln and McKay were responsible.

(3) Medical treatment. Plaintiff also states that he has requested treatment for ailments such as cracking and bleeding skin, severe back pain, bumps on his face due to lack of shaving razors, and hemorrhoids. At his deposition, plaintiff testified that defendants Bergeron, Wallace, and McKay were responsible for the acts underlying this claim.

(4) Denial of Due Process. Plaintiff says that he had a "hearing" on the above-mentioned violations but that he did not receive due process. He complains that although he asked for MDOC employees to view video footage of the events, his request was denied. He complains that the statements of corrections officers were believed over his own, and that his request for witness statements from other inmates were denied. He states defendants Wallace, Cossey, Buhs, Thompson, Armstrong, and Merideth were responsible for those wrongs. Plaintiff also alleges that he was issued a conduct violation for "damage to property" and accused of putting a hole in the "rubber room" door. He denies causing the hole and requested that the video footage from the camera in the room be reviewed. He says the prison destroyed the evidence and that defendant Merideth found him guilty and fined him over $1,100 in violation of his Seventh Amendment right to trial by jury. He also states that defendant #18 was responsible.

(5) Prison conditions. Plaintiff also complains that he has not had any recreation in the eight months since arriving at the prison in violation of his Eighth and Fourteenth Amendment rights. He also states he has been deprived of shaving razors and subjected

3

to a rat and bug infestation and has been bitten by them. Plaintiff also states he has been wrongly denied protective custody, despite threats made by other inmates to his safety. In addition, he states he has not been permitted to make a phone call since August 27, 2012 despite having been allegedly earned the privilege of a phone call on February 10, 2013 by having been conduct violation-free for 30 days. He also states that his limited funds (caused by the allegedly improper fines) cause him to choose between hygiene items and stationery.

Plaintiff filed this lawsuit on July 10, 2013.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life*

4

*Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion. Local Rule 4.01 (E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. ***All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party***.

(emphasis added). Even where all of movant's statements of fact are deemed admitted, the Court must look at the entire record to determine whether summary judgment is warranted.

With these principles in mind, the Court turns to the discussion.

## III. Discussion

Defendants contend they are entitled to summary judgment on each of plaintiff's claims on the merits. They also argued that they are entitled to summary judgment based on plaintiff's failure to exhaust his administrative remedies before filing his lawsuit; however, in the defendants' reply memorandum, they withdrew exhaustion of remedies as a ground for summary judgment.

### A. Denial of Access to Legal Materials

Plaintiff alleges that, upon his transfer to SECC, his legal materials were taken from him and not returned. He states that he asked certain defendants --- Buhs, Seabaugh, Wigfall, and Cossey --- for the return of his materials, but that his requests were denied. Specifically, plaintiff states he was unable to provide witness information or legal research to his attorney in support of his criminal appeal.

At the outset, the Court notes that because personal involvement is required for a § 1983 claim, and because plaintiff testified that only defendants Buhs, Seabaugh, Wigfall, and Cossey were so involved in this alleged deprivation, the other defendants are entitled to judgment on that basis. *See Beck v. LaFleur*, 257 F.3d 764, 765 (8th Cir. 2001) (requiring § 1983 plaintiff to plead and prove each defendant was personally involved in deprivation of constitutional right). In addition, plaintiff states in his response brief that

he consents to the dismissal of defendant Wigfall. So the remaining defendants for this claim are Buhs, Seabaugh, and Cossey.

It is well-settled that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). As the Supreme Court more recently articulated, *Bounds* is rooted in a line of cases in which the Supreme Court protected the right to access to the Courts "by prohibiting state prison officials from actively interfering with inmates' attempts to prepare legal documents." *Lewis v. Casey*, 518 U.S. 343, 350 (1996). The Supreme Court is clear, however, that *Bounds* and its progeny do not "create an abstract, freestanding right to a law library or legal assistance." *Id.* Thus, to sustain a claim based on denial of access to legal materials, plaintiff must prove that he suffered actual injury or prejudice as a result of the alleged denial of access. *Id.*; *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). That is, "the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. *Lewis* offered as examples of injury (1) the dismissal of a complaint for failure to comply with a technical requirement about which the prisoner could not have known because of deficient facilities, and (2) the inability to file a complaint due to inadequacies of the law library. *Id.* "Finally, we must observe that the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the *Bounds* line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated…or habeas petitions." *Id.* at 354; see also *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir.

7

1996) (stating that inmates must "assert that they suffered actual injury to pending or contemplated legal claims in order to state a constitutional claim").

Plaintiff has testified that he asked defendants Buhs, Seabaugh, and Cossey for his legal materials and that they either said no or ignored his requests. Plaintiff said the legal materials included both witness information and his attorney's address, so he was unable to communicate with his attorney. Plaintiff also sought to use the law library but could not because he was in administrative segregation; he was told he needed to use forms to request legal resources, but the defendants would not give him the forms. Regardless, plaintiff has not shown that his appeal --- for which he did have legal representation --- was injured by these failings, and defendants must therefore be granted summary judgment on this claim.

### B. Retaliation

Plaintiff alleges that defendants issued unfounded conduct violations against plaintiff and denied plaintiff protective custody because plaintiff had requested grievance forms. Plaintiff identified defendants Thompson, Buhs, Cossey, Wigfall, Brown, Hayes Bailey, Kline, Moss, Bergeron, Lincoln, Hoskins, Parker, May, Hack, Cantrell, and Petty as those who retaliated against him (although he has since dropped his claim against defendant Wigfall).

"A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). Plaintiff "has a heavy evidentiary burden to establish a prima facie case." *Id.* (citing *Murphy v. Mo. Dept. of Corr.*, 769 F.2d 502, 503 n.1 (8th Cir. 1985)). "Merely alleging that an act was

8

retaliatory is insufficient." *Id.* Moreover, "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule. … Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (internal citation omitted). Under this standard, "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Id.* at 831. Each of the conduct violations issued by defendants Brown, Hayes Bailey, Kline, Moss, Bergeron, Lincoln, Parker, May, Hack, Cantrell, and Petty alleged to have been retaliatory were supported by a report from a correctional officer and were made by an impartial decisionmaker.[3] As for defendants Thompson, Buhs, and Cossey, plaintiff was not disciplined by those individuals. Defendants will thus be granted summary judgment on plaintiff's retaliation claims.

### C. Denial of Medical Care

Plaintiff claims he was denied appropriate medical care related to an exposure to pepper spray. At his deposition, plaintiff testified that defendant Bergeron, Wallace, and McKay were involved in denial of care after that incident. To prevail on a claim based on denial of medical care in violation of the Eighth Amendment, a plaintiff must show (1) he had a serious medical need of which defendants were aware, and (2) that the defendants' deliberate indifference to that need caused harm to the plaintiff. *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 885 (8th Cir. 2009).

---

[3] Plaintiff did not dispute the facts set forth by defendants in their statement of undisputed facts (#87-1) and thus they are admitted for the purpose of summary judgment. Mo. E.D. Local Rule 4.01 (E).

9

Here, plaintiff testified that he did not know whether defendants Wallace and McKay were even aware that pepper spray had been used on him. Similarly, plaintiff testified that Bergeron was involved in restraining him in a restraint chair. Plaintiff also states (contrary to defendants' assertions) that Bergeron sprayed him in the restraint chair in response to plaintiff's taunting Bergeron about not being able to get the restraints on. Significantly, plaintiff does not say that Bergeron knew he was suffering or that Bergeron refused to call for a nurse. Plaintiff does not dispute that he cannot establish the personal involvement of any defendant; rather, he suggests that he should have been afforded counsel to investigate and that medical staff do not wear proper identification.

Notably, plaintiff does not claim excessive force was used; rather, his claim is entirely couched as one of failure to obtain medical treatment. However, plaintiff does not offer any evidence regarding anyone exhibiting deliberate indifference to a serious medical need. In fact, plaintiff testified that a nurse came by to check the restraints, but he generically says he got "no real medical attention." Summary judgment will be granted to defendants on this claim.

### D. Denial of Due Process

Plaintiff claims his due process rights were violated when he was issued conduct violations without being allowed a hearing or to offer the video and other evidence he desired. In particular, plaintiff complains that he was wrongfully fined more than $1,000 after being accused of damaging a wall in his cell; plaintiff states that the Constitution requires that he be afforded a jury trial for recover of any amount exceeding $20. Plaintiff is mistaken, however: due process does not require a jury trial for all takings. *See Tull v. United States*, 481 U.S. 412, 427 (1987). In addition, plaintiff failed to identify the defendants who allegedly were responsible for denying him due process. As with

10

plaintiff's other constitutional claims, plaintiff must show "sufficient personal involvement" by one or more defendants to maintain his due process claim. *Beck*, 257 F.3d at 766. Plaintiff has not done so here, as he does not identify the individual or individuals responsible for the alleged due process violation. Plaintiff does not dispute his failure to do so. In addition, "[d]ue process requirements are satisfied if some evidence—that is, any evidence in the record—supports the disciplinary decision." *Rudd v. Sargent*, 866 F.2d 260, 262 (8th Cir. 1989). Summary judgment must therefore be granted to defendants.

### E. Prison Conditions

Plaintiff claims that he suffered injuries including pain in his joints from lack of recreation time, facial scars from a lack of razors, and that he felt unsafe as a result of being denied protective custody. Defendants contend they are entitled to summary judgment on these claims because plaintiff has not shown sufficient injury to maintain a claim. The harm related to a denial of recreation time must rise to a threat to the inmate's health or muscle atrophy. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). Here, plaintiff clams that he feels joint pain, which falls well short of a threat to his health.

With respect to plaintiff's claim that he was psychologically harmed by not being placed in protective custody, plaintiff must show physical injury before being entitled to emotional distress damages. *Williams v. Hobbs*, 662 F.3d 994, 1011 (8th Cir. 2011). Plaintiff has not done so here.

Finally, plaintiff claims his face broke out and then developed scars due to a lack of razors. He suggests that his inability to shave his face caused "bumps" on his face that turned into "open sores" that eventually scarred over. In his response memorandum, plaintiff also states that his lack of access to hygiene items caused him to have permanent

11

unpleasant body odor. "A long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996). However, "extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations and citations omitted). Plaintiff's complaints here do not rise to the level of extreme deprivations necessary to make out an Eighth Amendment claim, and summary judgment will be granted to defendants on this point.

IV. **Plaintiff's Motion for Summary Judgment (#73)**

The plaintiff's motion for summary judgment focuses on his due process claim. The substance of plaintiff's argument is discussed above, and the motion is denied for the same reasons defendants' motion is granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment is **DENIED.**

Dated this   23rd   day of February, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE